**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOSEPH SMITH,

                                Petitioner,

            - v -                                  9:18-CV-0160
                                               (BKS/DJS)

SUPERINTENDENT, Cayuga Correctional Facility,[1]

                              Respondent.


**APPEARANCES:**                  **OF COUNSEL:**

JOSEPH SMITH
Petitioner, *Pro Se*
15-A-3135
Cayuga Correctional Facility
P.O. Box 1186
Moravia, New York 13118

HON. LETITIA JAMES               ALYSON J. GILL, ESQ.
Attorney General of the State of New York    PRISCILLA I. STEWARD, ESQ.
Attorney for Respondent            Assistant Attorneys General
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] Petitioner has been transferred to the Cayuga Correctional Facility, and therefore the Court *sua sponte* amends the caption of this matter to reflect the name of the state official who presently has custody of him.  *See Torres v. Superintendent of Upstate Corr. Facility*, 2007 WL 603402, at *5 (N.D.N.Y. Feb. 23, 2007) (noting that, under 28 U.S.C. § 2243, the correct respondent in a habeas corpus petition is the superintendent of the facility where the petitioner is presently being held).  Accordingly, the Clerk of the Court is directed to terminate "Earl Bell, Acting Superintendent" as Respondent, add "Superintendent, Cayuga Correctional Facility" as the new Respondent, and revise the caption of this case accordingly.

## REPORT-RECOMMENDATION and ORDER[2]

*Pro se* Petitioner Joseph Smith, currently incarcerated at Cayuga Correctional Facility, seeks a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner's incarceration stems from his conviction on May 6, 2015, for Criminal Possession of a Controlled Substance in the Third Degree, Criminal Possession of a Controlled Substance in the Fifth Degree, and False Personation. Dkt. No. 24, State Court Record, "SR." at pp. 393-446. Petitioner asserts the following grounds for Habeas relief: (1) his confession was coerced; (2) evidence was obtained pursuant to an unconstitutional search and seizure; (3) the conviction was obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled because Petitioner was not permitted to ask about potential prejudices of the prospective jurors and there were no African-Americans on the jury; and (4) Petitioner's court-appointed lawyer refused to submit numerous motions on Petitioner's behalf and refused to raise issues in open court for the Petitioner, which resulted in Petitioner's decision to represent himself. Dkt. No. 1, Pet. Respondent opposes the Petition and contends that the application should be denied. Dkt. No. 23, Resp.'s Mem. of Law. Plaintiff has submitted a Traverse. Dkt. Nos. 31, 41, & 43. For the reasons that follow, it is recommended that this action be dismissed in its entirety.

---

[2] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On April 18, 2014, two undercover police officers observed Petitioner walking on Henry Street in the City of Kingston, Ulster County, New York, and engaging in what the officers believed to be an aborted drug sale between himself and a third party, Irving Lowe.  Dkt. No. 24-2, Transcript of Feb 11, 2014, Pre-trial Hearing ("H. Tr.") at pp. 18-24, 48-59.  Petitioner was stopped, questioned, searched, and then arrested.  *Id.*  A bag of crack cocaine was recovered from Petitioner's hat at the scene, and a further search at the police station resulted in seventeen additional bags of cocaine being discovered.  *Id.*

Petitioner was originally charged by Criminal Complaint and was thereafter indicted in June of 2014.  On October 23, 2014, a Superseding Indictment was handed up, charging Petitioner with Criminal Possession of a Controlled Substance in the Third Degree, in violation of Section 220.16, Subdivision 1, of the Penal Law of the State of New York; Criminal Possession of a Controlled Substance in the Fifth Degree, in violation of Section 220.06, subdivision 5, of the Penal Law of the State of New York; and False Personation, in violation of Section 190.23, of the Penal Law of the State of New York.  SR. 56-57.  Petitioner entered a not guilty plea and proceeded to trial.

On February 11, 2015 a pretrial hearing was held before Ulster County Court Judge Donald Williams.  Pursuant to a stipulation, the issues before the County Court were (1) whether the initial search and seizure of Petitioner was lawful; (2) whether the

3

Petitioner's arrest and subsequent interview were lawful; and (3) whether there was a violation of Petitioner's *Miranda* rights, such that his statements were involuntary and should not be used at trial.  H. Tr. at p. 78.  The following additional hearings were held: a *Huntley* hearing, a *Dunaway* hearing, a *Mapp* hearing, a *Sandoval* hearing, and an audibility hearing.  H. Tr. at pp. 8-15.

With regard to the lawfulness of the stop, the Court heard testimony from Kingston Police Detective Eric Van Allen, who was working in the Special Investigation Unit in an undercover capacity on April 18, 2015 in an area of Kingston that was known for drug dealing.  H. Tr. at pp. 17-19.  At that time he observed Irving Lowe, with money in his hand, approaching another individual whom he later identified as Petitioner Joseph Smith. H. Tr. at p. 19.  Irving Lowe was a known drug user, having been arrested by Detective Van Allen on numerous prior occasions.  H. Tr. at pp. 20, 35.  Prior to the transaction being consummated, however, Detective Van Allen indicated that Lowe and Smith were alerted to the police presence, and walked away from each other.  H. Tr. at pp. 21, 22, 35, & 36.  At this time he observed Mr. Smith move his hand to his hat.  H. Tr. at pp. 21-22. Detective Van Allen approached Mr. Lowe and asked him questions, and Mr. Lowe acknowledged that he was about to "cop" something to Petitioner, but did not indicate what it was.  H. Tr. at p. 23.

4

Kingston Police Officer Richard Weaver was working with Detective Van Allen at the time of this event, and was instructed to interview Petitioner. H. Tr. at pp. 48-49. He approached Mr. Smith and advised him that they needed to talk. H. Tr. at p. 49. Mr. Smith stopped, and spoke to the officer. H. Tr. at p. 50. At that time Smith provided the police with a false name, Anthony Johnson, and two separate dates of birth, neither of which matched his professed age. H. Tr. at pp. 50-51, 54. Police Officer Weaver indicated that he needed to be truthful, but Mr. Smith persisted with his claim. H. Tr. at p. 51. At that point Smith was arrested by Officer Weaver on the charge of false personation. H. Tr. at pp. 51, 54. During the course of a search incident to that arrest, Officer Weaver found a small bag of what he believed to be crack cocaine located near the brim of Smith's hat. H. Tr. at p. 52.

Petitioner was arrested at the scene, and transported to the Kingston police station, approximately three minutes away. H. Tr. at pp. 51, 59. At the station Smith was subjected to a strip search, at which time seventeen small Ziploc bags, containing what was believed to be crack cocaine, were found inside a larger bag, which dropped from the area of the Petitioner's buttocks. H. Tr. at pp. 26, 43. Thereafter, Mr. Smith was interviewed by Detective Van Allen. Prior to the interview, Mr. Smith was given his *Miranda* rights and nodded his head in acknowledgment of those rights. H. Tr. at pp. 27, 87; Ct. Exhibit 1. The interview itself was recorded both in an audio and video formats.

*Id.* The interview began at 8:10 pm and continued until 8:47 pm, with breaks where Petitioner was left alone. Ct. Exhibit 1.

Counsel for Petitioner called Irving Lowe to testify at the hearing. H. Tr. at pp. 64-72. In sum and substance, Mr. Lowe indicated that he did not know Joseph Smith, and had no intention to speak with him or to do anything else with him that day. H. Tr. at pp. 64-65. As he was walking down the street the police simply jumped out, stopped and searched him. H. Tr. at p. 65. He denied telling Officer Van Allen that he was trying to buy drugs from Mr. Smith, and in fact denied that he had any money on him whatsoever. H. Tr. at pp. 65, 67. Upon questioning by the Assistant District Attorney, Lowe acknowledged a series of prior drug convictions. H. Tr. at pp. 67-71. He denied that he used crack cocaine regularly - only a few times a week. H. Tr. at p. 71. Mr. Lowe was asked by Judge Williams where he was going on the day in question, and Mr. Lowe indicated he was going to the store to buy beer. H. Tr. at pp. 71-72. When questioned how we could do so without any money, Mr. Lowe indicated he did have "beer money" on him. H. Tr. at p. 72.

At the conclusion of the hearing, the County Court Judge concluded that he found the police officers' testimony to be credible, but that Mr. Lowe's testimony was not. H. Tr. at pp. 79-80. The Court concluded that there was probable cause for the arrest of Mr. Smith, particularly in light of the false information that he provided to the police after

being given a specific warning not to do so.  H. Tr. at pp. 80-88.  The discovery of the

crack cocaine also justified the arrest for criminal possession of a controlled substance.

H. Tr. at p. 88.

With regard to the issue of Petitioner's claim that his statements to the police were

coerced, the County Court Judge was presented with, and reviewed, the videotape of the

police interview at issue, which included Petitioner being advised of his *Miranda* rights,

and his acknowledgment of those rights.   H. Tr. at pp. 15, 86-90.  No further argument

was presented at the Hearing concerning any claim that the questioning of Mr. Smith was

somehow coercive or improper.  In fact, defense counsel utilized Petitioner's recorded

statements within the Hearing to attempt to show that he repeatedly denied any sale and

that he was merely a drug addict.  H. Tr. at p. 77.  At the end of the Hearing Judge

Williams concluded that Petitioner was fully advised of his *Miranda* rights, and that his

statements were voluntary as well as audible.  H. Tr. at pp. 15, 87-89.

A trial began in Ulster County on March 9, 2015, and on March 12, 2015, the jury

found Petitioner guilty of all charges. Tr. Tr. at p. 543.  On July 14, 2015, the County

Court sentenced Petitioner to an aggregate term of twelve years, plus five years post-

release supervision.  Dkt. No. 1-1 at p. 14.

Petitioner appealed his conviction to the Appellate Division, Third Department,

which affirmed the conviction and sentence. *People v. Smith*, 151 A.D.3d 1476, 1480 (3d

7

Dep't 2017).  Leave to appeal to the New York Court of Appeals was denied.  *People v. Smith*, 30 N.Y.3d 983 (2017).  This proceeding followed.

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003).  A federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  (2) If so, was the state court's decision "contrary to" that

established Supreme Court precedent? (3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)). The standard of review under section 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412. A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

9

AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(e)(1)).

### III. DISCUSSION

### A.  Claims Not Cognizable in a Federal Habeas Proceeding

As an initial matter, as his second basis for Habeas relief, Petitioner maintains that his statements made to law enforcement officers, and the narcotics that they found on his person, should have been suppressed because they were obtained as a result of an unlawful stop on the street.  However, any challenge to Petitioner's arrest and the admissibility of his resulting statements is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976).  Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial.  *Id.* at 482.  "The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed." *Collier v. Superintendent, Coxsackie Corr. Facility*, 2020 WL

2341062, at *11 (N.D.N.Y. May 11, 2020) (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983)).

The Second Circuit "has made clear that a fourth amendment claim may not be considered by a federal habeas corpus court if the state has provided an opportunity fully and fairly to litigate it." *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983). In order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72. "It is well-settled that New York State provides for a full and fair opportunity to litigate a Fourth Amendment claim." *Evans v. Giambruno*, 2000 WL 1876642, at *1 (S.D.N.Y. Dec. 26, 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir.1991)). And the record reflects that Petitioner took advantage of his opportunity to fully adjudicate the matter in state court. *See generally* H. Tr. 1-110. Petitioner Smith is therefore not entitled to habeas corpus relief on his claim of an unlawful seizure and search.

11

**B. Petitioner's Coerced Confession Claim**

A habeas petitioner must exhaust available state remedies, establish that there is either an absence of available state remedies, or that such remedies cannot adequately protect the his rights before proceeding in federal court. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (citing 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). This exhaustion requirement recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982). Claims are exhausted when they have been "fairly presented" to the state courts. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye v. Attorney General of New York*, 696 F.2d at 191; *Morales v. Miller*, 41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999). To satisfy the exhaustion requirement a petitioner must present his claims to the New York Court of Appeals. *Tyson v. Keane*, 159 F.3d 732, 735 (2d Cir. 1998) ("Exhaustion requires presenting a federal claim to the highest court of the state.").

In the present case, Petitioner's claim that his confession was involuntarily coerced is unexhausted because he failed to brief that claim on direct appeal to the New York State Court of Appeals. Dkt. Nos. 1-1 at pp. 2-7. This claim is also procedurally

defaulted because Smith cannot now return to state court and pursue a second direct appeal to exhaust it. *Aparicio v. Artuz*, 269 F.3d at 91. The facts that would support this claim were apparent on the record, and in particular in the pretrial hearing transcript, and New York does not permit collateral attack on the conviction where the defendant fails to raise that issue on direct appeal. *Id.* Petitioner's claim is therefore barred from review unless he can show cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, *i.e.*, that he is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006). There has been no such showing here.

Even if the Court were to consider the merits of the coerced confession claim, the Court would deny it. The voluntariness of Petitioner's statements to the police is a question of law which the Court reviews *de novo*. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). In making that determination the Court considers the totality of the circumstances surrounding the statements, including the conditions of the interrogation, the petitioner's personal characteristics, and the conduct of law enforcement officials. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see also United States v. Anderson*, 929 F. 2d 96, 99 (2d Cir. 1991).

The state trial court inquired into the voluntariness of Petitioner's statements and identified no issue of unconstitutional coercion. H. Tr. at pp. 89-90. The Appellate

Division affirmed this holding. *People v. Smith*, 151 A.D.3d 1476, 1478 (3rd Dep't 2017) (". . .to the extent that defendant challenges the voluntariness of his statements at the police station, there was no hint in the suppression hearing testimony that he was threatened or coerced to speak, and the interrogation video showed him being Mirandized before it began."). While this Court performs its own analysis, including a review of the video of the questioning, the state court's factual findings are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Here, the questioning by the investigating Officer was both by-the-book and professional. The police officer offered Petitioner both food and something to drink at the beginning of the questioning, which Petitioner declined. The police officer began with a lengthy explanation of Petitioner's rights as follows:

> You have the right to remain silent and refuse to answer any of my questions. Anything you do say can, will, be used against you in the court of law. As we discuss this matter, you have the right to stop answering my questions at any time you desire. You have the right to a lawyer before speaking with me, to remain silent before you talk to a lawyer, and have a lawyer present while being questioned. If you desire a lawyer but cannot afford one, one will be provided to you before questioning without cost to you. You understand your rights? [Petitioner nods]. All of them? What that means is, if you don't like something I ask you, you don't have to answer it. If you don't want to talk to me you don't have to talk with me. Any point in time that you want a lawyer, just speak up and say you want a lawyer. . . We will talk back and forth, but if you don't want to say something to me you do not have to say it. I will be in and out of the room a few times. It's eight o'clock right now I'm ordering something to eat, want something to eat? [petitioner shakes head no]. The bottom line is that we do this every day. Now, I like the fact that you didn't try to harm us on the street. A lot of dudes fight with us, try to hurt us, run from us, bunch of different things,

14

so I respect you being a gentleman, so, I'm not going to mistreat you.  Deal.
It is what it is.

Ct. Exhibit 1.

The questioning was at all times respectful and generally cordial.  It was not overly lengthy with the actual questioning lasting about twenty minutes.  Of significance, during the questioning Petitioner did admit to giving a false name and date of birth to the police officer at the scene, and when asked if he "hustled," Petitioner indicated that he was " just trying to get by."  *Id.*  In light of Petitioner's history with the criminal justice system, the nature of the warnings provided prior to any questioning, and the overall length and tenor of the interview, I find no constitutional violation.   Indeed, Petitioner makes no substantive argument in this regard other than to say that the prosecutor or the police officer misinterpreted his statements at the trial.  Pet. ("Agents of the court twisted defendant's words around during a videotaped interrogation; in order to secure a conviction.  The jury was coerced into believing the defendant admitted to selling drugs when the record states otherwise.").  The trial jury was provided with the video of the interview, and was therefore able to make its own determination as to what Petitioner said, and the significance of those statements.

### C. Jury Selection and Diversity

Petitioner lists the composition of the jury as another ground for 28 U.S.C. § 2254(a) relief. In particular, he alleges that his jury was unconstitutionally selected and impaneled. Initially, he cries foul on the ground that there were no African Americans on his jury, and he is Black. Pet. at p. 5.

"The Sixth Amendment requires that jury panels be drawn from a source representing a 'fair cross section' of the community in which the defendant is tried." *United States v. Jackman*, 46 F.3d 1240, 1244 (2d Cir.1995) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 536 (1975). The "fair cross section" requirement, however, holds only with regard to the larger jury pool serving as the source of names of potential jurors, and not to the actual trial petit jury. *See Taylor v. Louisiana*, 419 U.S. at 538 ("Defendants are not entitled to a jury of any particular composition."); *accord United States v. Jackman*, 46 F.3d at 1244; *Roman v. Abrams*, 822 F.2d 214, 229 (2d Cir.1987) ("what the Sixth Amendment guarantees to a defendant is not that he will have a petit jury of any particular composition but that he will have the possibility of a jury that reflects a fair cross section of the community.").

In order to establish a *prima facie* violation of the Sixth Amendment, a defendant must prove that (1) the group claimed to be excluded is distinctive in the community, (2) the representation of the group in the jury pool is not fair and reasonable in relation to the

number of members of the group in the community, and (3) the under-representation is the result of systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). Petitioner in the present case has provided no information of any systematic exclusion of potential jurors from the venire as required by the Supreme Court's holding in *Duren*. Therefore, this claim provides no basis for habeas relief. *Barnett v. Burge*, 2007 WL 1624770, at *5 (N.D.N.Y. June 6, 2007) (dismissing petition absent evidence of systemic exclusion); *Beverly v. Walker*, 899 F. Supp. 900, 910 (N.D.N.Y. 1995) (same).

Petitioner's second argument with regard to the jury panel fares no better. It appears that Petitioner believes that he is entitled to have a jury made up wholly of those who share his particular religious belief. This is borne out by the questions that Petitioner attempted to ask as part of his *voir dire* at the criminal trial:

| | |
|---|---|
| THE COURT: | Mr. Smith, any questions? |
| THE DEFENDANT: | Yes your honor, I just have one question of each juror. You all look like hard-working people. What is your name, sir? |
| JUROR: | [responds with name] |
| THE DEFENDANT: | Are you a Christian man? |
| JUROR: | I am. |
| THE DEFENDANT: | Do you believe Jesus Christ saved the world? |

17

THE COURT:                  Mr. Smith, you can only ask questions that deal with the qualifications of the jurors to sit on this jury, okay.

THE DEFENDANT:              This is part of it.

THE COURT:                  I'm ruling it is not, sir.

THE DEFENDANT:              Right above you it says In God We Trust.

THE COURT:                  I'm ruling it is not. We have spoken on this.

THE DEFENDANT:              In that case I have nothing more to say. I feel if you're not a Christian and you don't have –

THE COURT:                  Sir, whether somebody is a Christian, a Jew, a Muslim has no bearing on whether they can sit as a juror, so I have to, and I have explained this to you, stop that line of questioning. Do you have any other questions of the jurors that deal with the qualifications of the jurors?

THE DEFENDANT:              I don't want to speak anymore, I'd rather let [assigned counsel] take over because my religion is I am a Christian.

[Jury is excused]

THE COURT:                  All right. Do you wish to continue to represent yourself or are you now asking that Ms. Connolly represent you?

THE DEFENDANT:              I was trying to represent myself. You are not allowing me to. What you want me to do?

THE COURT:                  Mr. Smith, you have the right to represent yourself or to be represented by an attorney, but as I told you, if you choose to represent yourself, you will be held to the same standards as an attorney. We are going to discuss that one of two ways. The question of one's

18

|  | |
|---|---|
| | religion or whether they believe in Christ is not an appropriate question that the law says dealing with qualifications of the jurors and I'm obligated to stop that. That is the law, sir. |
| THE DEFENDANT: | No, this country was founded by Christians. . . |
| THE DEFENDANT: | I don't understand this. How come I can't ask them a question? Because this is a reasonable question. You are telling the jury that the prosecution has to prove beyond a reasonable doubt, you know what I mean? Is my belief, you know what I'm saying, only a Christian can make a reasonable conclusion concerning things because they have knowledge of the truth. If you don't have knowledge of the truth – |
| THE COURT: | Unfortunately, that's a prejudiced decision and prejudice has no place in a court of law. Whether somebody is a Christian, an agnostic, whether somebody doesn't believe in God, whether somebody is a Muslim, a Jew, a Hindu, that does not by itself by classification disqualify somebody from being a juror, nor does it deal with the qualifications of the jurors in this Court has a right to make legal determinations. |

T. Tr. at pp 118-124.

The Equal Protection Clause of the Constitution forbids a prosecutor from challenging jurors solely on the basis of race or gender. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). Here, Petitioner is not making any argument that the criminal prosecutor utilized peremptory challenges to exclude competent minority jurors from the panel on the basis of a perceived stereotype. Rather, Petitioner is asserting his own right to create

a religious stereotype and impose it on a criminal jury.  *Batson* has not been extended by the Supreme Court to apply to religious principles. *United States v. Brown*, 352 F.3d 654, 666 (2d Cir. 2003) (citing *Davis v. Minnesota*, 511 U.S. 1115 (1994))   "As a result, Petitioner's religion-based *Batson* claim cannot form the basis of a habeas petition, because the state court decisions were not contrary to, nor involved an unreasonable application of clearly established Supreme Court precedent." *DeVorce v. Philips*, 2013 WL 4406008, at *15 n. 15 (S.D.N.Y. Aug. 7, 2013) (citing 28 U.S.C. § 2254(d)(1)) (internal quotations and citations omitted).

### D.  *Pro Se* Representation and Ineffective Assistance of Counsel

In his Petition, Smith maintains that he was denied effective assistance of counsel principally because his assigned counsel refused to submit numerous motions on Petitioner's behalf, and refused to raise issues in open court. Pet. at p. 5.  This conduct, in turn, forced Petitioner to represent himself during various stages of the criminal proceeding. *Id.*  Somewhat inconsistently, Petitioner also alleges that he was denied self-representation at the criminal trial.  *Id.*

A criminal defendant is entitled to legal counsel that provides constitutionally adequate representation. To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of

20

the proceedings would have been different. *Premo v. Moore*, 562 U.S. 115, 121-22, (2011); *accord Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Constitution does not mandate perfection, however, and certainly there is no requirement that defense counsel cede their professional judgment and standards to the unilateral requests of the defendant. Defense counsel has a duty to give a defendant "an honest appraisal of his case." *McKee v. Harris*, 649 F.2d 927, 932 (2d Cir. 1981) (quoting *Brown v. United States*, 264 F.2d 363, 369 (D.C. Cir. 1959) (*en banc*) (Burger, J., concurring)). The mere fact that a defendant's preferred litigation strategy differs from that of his counsel's does not make counsel's representation ineffective. *United States v. Sandford*, 342 F. Supp. 3d 333, 336 (W.D.N.Y. 2018). "A counseled defendant, however, has no automatic right to insist that his lawyer make motions that he would prefer be made . . . or to insist on new counsel whenever he and his attorney differ on strategy." *United States v. Rivernider*, 828 F.3d 91, 107 (2d Cir. 2016) (internal citations omitted).

Starting first with the claim of ineffective defense counsel, that allegation is not borne out by the record. Defense counsel made appropriate pretrial motions; submitted a cogent closing; called a witness (Irving Lowe) at trial and at the pretrial hearing that supported Petitioner's claim of innocence; made relevant objections; and otherwise appropriately acted as a committed advocate for Petitioner.

Petitioner's primary claim is that his counsel did not make claims or arguments that he wanted her to make.  SR at p. 453.  It is evident that Petitioner wanted to ask prospective jurors about their personal religious views, an inquiry that was, as noted above, one that the trial court properly prohibited.  That Petitioner was apparently upset that his counsel would not ask such questions, and therefore he was forced to attempt to ask them himself on a *pro se* basis, is not a basis for any meritorious constitutional claim. Petitioner also wanted to make the argument that his rights were violated because there were no black members on his particular jury, but without evidence that such minorities were systematically excluded from the venire, there was no basis for such a motion. Petitioner objected to the fact that he testified before the grand jury in prison attire, while restrained, but as opposing counsel notes, the trial was based upon a subsequent grand jury indictment, and Petitioner never testified before that panel. Dkt. No. 23 at p. 24. Finally, the decision of defense counsel not to introduce before the jury Petitioner's criminal history involving drug use and possession, was a tactical decision that will not be questioned by this Court.

Finally, "it is well settled that a defendant may not disrupt proceedings by demanding new counsel whenever he differs from his lawyer's strategic, legal, or ethical judgments about how to conduct a case." *Id.* at 108.  "[C]ourts must impose restraints on the right to reassignment of counsel in order to avoid the defendant's manipulation of the

right so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001) (internal quotation omitted).  Of course, one of the options that a criminal defendant has reserved to him in the face of dispute with appointed counsel is to decide to represent himself, and that choice will be allowed so long as his decision to do so is knowing, intelligent, and voluntary, or stated another way, "his choice is made with eyes open." *Faretta v. California*, 422 U.S. 806, 835 (1975).

In the present case, Petitioner raised his desire to represent himself early on in the criminal case, indicating that he believed that defense counsel was overworked.  Trial Tr. at p. 10.  The trial court went through a lengthy discussion with Petitioner explaining the dangers of self-representation, and after listening to all of the information provided by the trial court, Petitioner decided to represent himself.  Trial Tr. at pp. 5-25.  Throughout the course of the trial, however, Petitioner went back and forth between having counsel and representing himself.  While a defendant's decision to represent himself at trial is not cast in stone, and ordinarily a defendant can change his mind, the trial court nevertheless has the right to control the proceedings to protect against inefficiencies, and may subject the defendant's subsequent request to a more searching inquiry.  As noted by the Second Circuit:

> A district court need not countenance abuse of the right to counsel or the right to waive it, and it is well within the court's discretion to deny a post-waiver motion for new counsel when it is made in an effort to delay or disrupt the proceedings. A defendant is not entitled to choreograph special appearances by counsel or repeatedly . . . alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice.

*United States v. Kerr*, 752 F.3d 206, 221 (2d Cir. 2014), *as amended* (June 18, 2014) (internal quotations and citations omitted).

The Appellate Division viewed the totality of the transcript and concluded both that there had been an effective and knowing decision by Petitioner to proceed *pro se*, as well as clear attempts by Petitioner to manipulate the process after the trial began:

> Defendant was allowed to proceed *pro se* at trial after a searching inquiry by County Court and he questions the subsequent refusal of County Court to let him resume self-representation. County Court made that decision after defendant repeatedly directed defense counsel (who remained in the courtroom as standby counsel) to represent him only to state later that he was resuming self-representation, thereby creating confusion and delay. This behavior was consistent with defendant's overall behavior at trial, which was disorderly and aimed at improperly swaying the jury in his favor. County Court finally refused to allow defendant to resume self-representation, observing that he was engaging in intentionally disruptive "conduct which would prevent the fair and orderly exposition of the issues" (*People v McIntyre*, 36 NY2d 10, 17 [1974]; *accord People v Finkelstein*, 28 NY3d 345, 349 [2016]), and we cannot say that the trial court erred in doing so (*see People v Gilbo*, 52 AD3d 952, 954-955 [2008], *lv denied* 11 NY3d 788 [2008]; *People v Cooks*, 28 AD3d 362, 363 [2006], *lv denied* 7 NY3d 787 [2006]).

*People v. Smith*, 151 A.D.3d 1476, 1479 (3d Dep't), *lv denied,* 30 N.Y. 3d 983 (2017).

The conclusions of the Appellate Division are well-founded, and there is no basis in this Petition to conclude otherwise.

## IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2).  Any further request for a COA must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[3] within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN**

---

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).

**FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*,

892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated:  September 17, 2020
       Albany, New York

 

Daniel J. Stewart
U.S. Magistrate Judge

26